# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### July 16, 2013 Session

## BRUCE ELLIOT v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Davidson County**
**Nos. 2007-B-1546, 1547     Steve R. Dozier, Judge**

---

**No. M2012-01266-CCA-R3-PC - Filed November 26, 2013**

---

The Petitioner, Bruce Elliot, challenges the post-conviction court's finding that he received the effective assistance of counsel at trial and its denial of post-conviction relief from his jury convictions for conspiracy to deliver 300 grams or more of cocaine within 1,000 feet of a school, conspiracy to possess 300 grams or more of cocaine, possession of 300 grams or more of cocaine, all Class A felonies; money laundering, a Class B felony; possession of over one-half ounce of marijuana and possession of a firearm by a convicted felon, both Class E felonies. The Petitioner contends that his trial counsel's failure to file a motion to suppress the wiretaps on his telephone, which provided the basis for all evidence subsequently obtained against him, was deficient and that he was prejudiced by this deficiency. Upon consideration of the record and the applicable authorities, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN and ROGER A. PAGE, JJ., joined.

James O. Martin, III, Nashville, Tennessee, for the appellant, Bruce Elliot.

Robert E. Cooper, Jr., Attorney General and Reporter; Clark B. Thornton, Assistant Attorney General; Victor S. (Torry) Johnson, III, District Attorney General; and John Zimmerman, Assistant District Attorney General; for the appellee, State of Tennessee.

## OPINION
### FACTUAL BACKGROUND

The Petitioner was convicted by a Davidson County jury of conspiracy to deliver 300 grams or more of cocaine in a school zone, see Tenn. Code Ann. § 39-17-417(j)(5);

possession of 300 grams or more of cocaine; possession of a firearm by a convicted felon, see id. at § 39-17-1307(b)(1)(a); possession of one-half ounce or more of marijuana, see id. at § 39-17-417(g)(1); conspiracy to deliver 300 grams or more of cocaine within 1,000 feet of a school, see id. § 39-17-417(j)(5), -432; and money laundering, see id. at § 39-14-903. See State v. Elliott, 366 S.W.3d 139, 141 (Tenn. Crim. App. 2010), perm. app. denied (Tenn. Aug. 26, 2010). The trial court imposed an effective sixty-six-year sentence in the Department of Correction. On direct appeal, the Petitioner challenged the sufficiency of the evidence, contended that the trial court erred by denying his motion to suppress evidence seized during a search of his apartment, and claimed various errors in his sentencing. Id. at 139. This court affirmed the Petitioner's convictions, and our supreme court subsequently denied permission to appeal that decision. Id. at 141.

The Petitioner filed a petition for post-conviction relief on August 19, 2011, citing multiple bases for relief. However, as relevant to this appeal, he alleged that trial counsel was deficient for failing to "challenge the wiretap applications and orders employed in the investigation of this case and failed to move the court to suppress the evidence which was the fruit of the wiretaps."[1] The Petitioner argued that the wiretap applications for Angela Fleming's and David Wade's telephones, hereinafter referred to as "initial wiretaps," which were the first wiretaps issued in relation to this case, did not contain a sufficient statement of probable cause that a wiretap would reveal evidence of a conspiracy, nor did they demonstrate the requisite necessity pursuant to the wiretapping statute. The Petitioner argued that these deficiencies rendered the applications insufficient and the subsequent orders authorizing the wiretaps illegal. The Petitioner explained that because both the probable cause and necessity sections of the initial wiretap applications were incorporated by reference in the subsequent wiretaps applications, including the Petitioner's, the illegality extended to all of the wiretap applications. The Petitioner also argued that the limited additional information provided in the necessity section of the wiretap application for his phone was also insufficient to meet the requirements of the Wiretapping and Electronic Surveillance Act (Wiretap Act). Further, given that the evidence used against the Petitioner at trial was based primarily on the information derived from this illegal wiretap surveillance, based on the "fruit of the poisonous tree" doctrine, suppression of the evidence against the Petitioner would have been granted and the Petitioner would have been acquitted. As such, trial counsel's deficiency in failing to request suppression of the wiretap applications relevant to this case resulted in prejudice, and a new trial is warranted. The State maintained that the post-conviction court properly denied the Petitioner post-conviction relief. The following evidence was adduced at the post-conviction hearing on March 30, 2012.

Trial counsel, the only witness to testify at the hearing, explained that he did not file

---

[1] Bases cited in the post-conviction petition that are not raised on appeal will be treated as waived.

a motion to suppress the wiretap applications because he did not think it would have merit. He further explained that he did not base his decision on the Petitioner's standing, or lack thereof, but that he looked at the wiretap applications from a general standpoint and determined that a challenge to their legality would not be successful. Trial counsel testified that he did file a motion to suppress the evidence retrieved from a search of the Petitioner's home and conceded that the search warrant authorizing that search was primarily based on information gleaned from the wiretap investigation. However, he noted that some of the Petitioner's associates were also being investigated. Trial counsel also testified that, although the Petitioner could not view the discs containing the wiretap applications and orders because he was incarcerated and did not have access to the appropriate equipment, they discussed the contents of the discs. Trial counsel further testified that he had handled several wiretap cases over the course of his career.

On cross-examination, trial counsel testified that he had been practicing criminal law for thirteen years, that 99.9 percent of his practice was criminal defense, and that he had conducted approximately forty to fifty jury trials in the past ten to twelve years. Trial counsel stated that he and the Petitioner primarily communicated in person but that they had also spoken on the phone and corresponded via mail. Trial counsel explained that their trial goal was to illustrate the weakness of the evidence allegedly proving that the Petitioner entered into a conspiracy with the others. As for the possession charges, the goal was to get the evidence from the search suppressed. Trial counsel admitted that losing the motion to suppress dimmed their chances for a "straight out acquittal" but that there was also an issue regarding the Petitioner's "direct possession" of the drugs at issue; another person, his girlfriend, also had access to the drugs. According to trial counsel, he and the Petitioner discussed their theory of the case, and there were no disagreements between them. Trial counsel explained that, despite losing the suppression motion, the Petitioner had no choice but to proceed to trial given the offer on the table at the time. Although trial counsel could not remember the terms of the offer, he insisted that he communicated that offer to the Petitioner and that the Petitioner knowingly rejected the offer.

After taking the matter under advisement, the post-conviction court denied relief and issued the following findings:

> As a preliminary matter, the State contends that the [P]etitioner lacks standing to challenge the wiretap orders for the Fleming and Wade telephones. Tennessee Code Annotated 40-6-304(h)(1) and (2) state, in pertinent part[,]
>
>> Any aggrieved person in any trial, hearing or proceeding in or before any court, . . . may move to suppress the contents of any intercepted wire, oral or electronic communication, or evidence

derived therefrom . . .

Aggrieved person means a person who was a party to an intercepted wire, oral or electronic communication, or a *person against whom the interception was directed* . . . (emphasis added).

The State asserts that the [P]etitioner does not fall within the definition of aggrieved person in regards to these initial wiretap applications, and therefore cannot challenge the legality of the wiretap order. However, these initial wiretap applications were directed against, in addition to Fleming and the Wades, "others as yet unknown" in "uncovering the full extent of the conspiracy" to traffic in large quantities of cocaine. Given the breadth of the purpose and potential targets of the wiretap application, the Court finds that the [P]etitioner would qualify as an "aggrieved person" under the statute and has standing to challenge the validity of the Fleming/Wade applications.

Regarding the Petitioner's argument that the initial warrants lacked sufficient probable cause, the post-conviction court found as follows:

The wiretap applications for the Fleming and Wade phones outlined a series of police-monitored cocaine purchases made by a confidential informant from Angela Fleming. The application also detailed physical surveillance and call logs which indicated that the Wades were supplying the cocaine to Fleming. The stated purpose of the wiretap was to "uncover the full extent of the conspiracy" and to "identify the Wades cocaine supplier(s)." The [P]etitioner essentially contends that the application contained no specific evidence that anyone was supplying the Wades with cocaine. However, the issuing judge, in this case Judge Watkins, does not abandon common sense when reviewing an affidavit in support of probable cause. Short of the possibility that the Wades were growing, processing and packaging their own cocaine, the conclusion that another conspirator was supplying them with such is a reasonable deduction from the affidavit. Therefore, the Court finds that the issuing judge had a substantial basis to conclude that a conspiracy to distribute over 300 grams of cocaine existed and that the conspiracy extended beyond Angela Fleming and the Wades, in that another individual or individuals were supplying cocaine to the Wades.

The [P]etitioner asserts that since there was no probable cause that the conspiracy extended beyond Fleming and the Wades, coupled with the fact that

-4-

the investigators had sufficient evidence to charge the aforementioned individuals from the monitored cocaine transactions with the confidential informant, that therefore no "necessity" existed for a wiretap intercept. The Court has already found that there was probable cause that the conspiracy extended beyond these individuals. The use of the confidential informant in gathering evidence against these low-level members of the conspiracy is further proof that the wiretap intercept was not employed as an initial step in the investigation, and that traditional methods of investigation were attempted and failed in discovering the full scope of the conspiracy and identity of the other conspirators. The Court finds that the probable cause and necessity requirements were met for the Fleming and Wade wiretap applications, and that those intercepts were lawfully issued.

The [P]etitioner also contends that there was insufficient probable cause and necessity in the application for wiretaps on each of the [P]etitioner's phones. The affidavits contain transcripts of conversations in which the [P]etitioner implicated himself in large-scale cocaine dealing. There was clear probable cause for the issuance of a wiretap based off these conversations. Furthermore, the application for the interception of the [Petitioner's] telephone demonstrates that the affiant considered alternative investigative procedures as required by statute. T.C.A. §[]40-6-304(a). Specifically, the application explains why the use of physical surveillance, confidential sources, infiltration by undercover officers, general questioning, use of search warrants, and the use of pen registers would not be sufficient in this particular case.

Based upon the foregoing reasoning, the Court finds that the wiretap intercepts which implicated the [P]etitioner were lawfully issued, and that the [P]etitioner has failed to show by clear and convincing evidence that trial counsel was ineffective in failing to file a motion to suppress, or that he was prejudiced by such inaction.

This appeal followed.

## ANALYSIS

The Petitioner contends that his trial counsel's failure to file a motion to suppress the wiretaps of his telephone communications constituted the ineffective assistance of counsel, violating his Sixth Amendment rights, because the relevant applications for wiretaps failed to demonstrate probable cause and necessity as required by Tennessee Code Annotated

sections 40-6-301 to -311. The State responds first that the Petitioner does not have standing to challenge the initial wiretaps and, alternatively, that the wiretap applications and orders complied with the Wiretap Act, and as such, the Petitioner cannot prove that he was prejudiced by trial counsel's failure to challenge the wiretaps.

Petitions for post-conviction relief are governed by the Post-Conviction Procedure Act. Tenn. Code Ann. §§ 40-30-101 to -122. To obtain relief, the petitioner must show that his conviction or sentence is void or voidable because of the abridgement of a constitutional right. Tenn. Code Ann. § 40-30-103. The petitioner must prove his factual allegations supporting the grounds for relief contained in his petition by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(2)(f); see Dellinger v. State, 279 S.W.3d 282, 293-94 (Tenn. 2009). Evidence is clear and convincing when there is no substantial doubt about the accuracy of the conclusions drawn from the evidence. Hicks v. State, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998).

The post-conviction court's findings of fact are conclusive on appeal unless the evidence in the record preponderates against them. See Nichols v. State, 90 S.W.3d 576, 586 (Tenn. 2002) (citing State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999)); see also Fields v. State, 40 S.W.3d 450, 456-57 (Tenn. 2001). The petitioner has the burden of establishing that the evidence preponderates against the post-conviction court's findings. Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997). This court may not re-weigh or reevaluate the evidence or substitute its inferences for those drawn by the post-conviction court. Nichols, 90 S.W.3d at 586. Furthermore, the credibility of the witnesses and the weight and value to be afforded their testimony are questions to be resolved by the post-conviction court. Bates v. State, 973 S.W.2d 615, 631 (Tenn. Crim. App. 1997).

### I. Ineffective Assistance of Counsel

Ineffective assistance of counsel claims are regarded as mixed questions of law and fact. State v. Honeycutt, 54 S.W.3d 762, 766-67 (Tenn. 2001). Thus, the post-conviction court's findings of fact underlying a claim of ineffective assistance of counsel are reviewed under a de novo standard, accompanied with a presumption that the findings are correct unless the preponderance of the evidence is otherwise. Fields, 40 S.W.3d at 458 (citing Tenn. R. App. P. 13(d)). The post-conviction court's conclusions of law are reviewed under a de novo standard with no presumption of correctness. Id.

Under the Sixth Amendment to the United States Constitution, when a claim of ineffective assistance of counsel is made, the burden is on the defendant to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial. Strickland

v. Washington, 466 U.S. 668, 687 (1984); see Lockart v. Fretwell, 506 U.S. 364, 368-72 (1993). A defendant will only prevail on a claim of ineffective assistance of counsel after satisfying both prongs of the Strickland test. See Henley, 960 S.W.2d at 580. The performance prong requires a defendant raising a claim of ineffectiveness to show that counsel's representation was deficient, thus fell below an objective standard of reasonableness or was "outside the wide range of professionally competent assistance." Strickland, 466 U.S. at 690. The prejudice prong requires a defendant to demonstrate that "there is a reasonable probability that, but for counsel's professional errors, the result of the proceeding would have been different." Id. at 694. "A reasonable probability means a probability sufficient to undermine confidence in the outcome." Id. Failure to satisfy either prong results in the denial of relief. Id. at 697. The Strickland standard has also been applied to the right to counsel under article I, section 9 of the Tennessee Constitution. State v. Melson, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

Both the United States Supreme Court and the Tennessee Supreme Court have recognized that the right to such representation includes the right to "reasonably effective" assistance, that is, within the range of competence demanded of attorneys in criminal cases. Strickland, 466 U.S. at 687 (1984); Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). In reviewing counsel's conduct, a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689. Deference is made to trial strategy or tactical choices if they are informed ones based upon adequate preparation. Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982). "Thus, the fact that a particular strategy or tactic failed or even hurt the defense does not, alone, support a claim of ineffective assistance." Cooper v. State, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

*A. Standing*

As a preliminary matter, we address the State's argument that the Petitioner lacked standing to challenge the initial wiretaps in this case. The Petitioner responds that he is an "aggrieved" person, as described in Tennessee Code Annotated section 40-6-304(h)(1) and (2), and as such, has standing to challenge the legality of the wiretap intercepts. That statute states, in relevant part,

> Any aggrieved person in any trial, hearing or proceeding in or before any court, . . . may move to suppress the contents of any intercepted wire, oral or electronic communication, or evidence derived therefrom . . . .
>
> Aggrieved person means a person who was a party to an intercepted wire, oral

or electronic communication, or a person against whom the interception was directed . . . .

Tenn. Code Ann. § 40-6-304(h)(1), (2).

The post-conviction court stated, "Given the breadth of the purpose and potential targets of the wiretap application, the Court finds that the [P]etitioner would qualify as an 'aggrieved person' under the statute and has standing to challenge the validity of the Fleming/Wade applications." We agree. The initial wiretap applications stated that one of the main goals the wiretap investigation was to determine "[t]he nature, extent, and method of operation by which the Target Subjects, and others as yet unknown, conduct their illicit drug trafficking business[,]" thus uncovering the "full extent of the conspiracy." It further stated that the "[t]arget [s]ubjects, A[ngela Christine Fleming], David Wayne Wade, Shawn Tyrone Wade, and others as yet unknown, have committed, are committing, and will continue to commit and/or conspire to commit offenses enumerated in T.C.A. §[]39-17-417 (j)(5), to wit:

a. Possession with intent to sell or deliver 300 grams or more of a substance containing cocaine,
b. Delivery and/or sale of 300 grams or more of a substance containing cocaine; and,
c. Conspiracy to commit the same."

Although not named specifically in the initial wiretap application as a target subject, the Petitioner is undoubtedly included in the "others as yet unknown" portion of the statement, as evidenced by the instant case. The plain meaning of Tennessee Code Annotated section 40-6-304(h)(2) supports the post-conviction court's conclusion that the Petitioner had standing to challenge the initial wiretaps because he was both a party to an intercepted wire and a "person against whom the interception was directed." See Tenn. Code Ann. §40-6-304 (h)(2).

*B. The Wiretapping and Electronic Surveillance Act*

The Petitioner contends that the wiretaps of his telephone conversations were unlawfully transmitted and monitored because the initial wiretap applications did not elucidate probable cause that there was a conspiracy to distribute large amounts of cocaine that extended beyond Angela Fleming and the Wades, nor did it show the necessity of the wiretaps, as opposed to employing other investigative means. The Petitioner also contends that the application to wiretap his phone, specifically, failed to show the necessity of utilizing a wiretap. To determine whether trial counsel's failure to request suppression of the wiretaps

-8-

violated the Petitioner's Sixth Amendment right to counsel, we must determine whether such a motion would have likely been granted if requested.

The Wiretap Act, Tennessee Code Annotated sections 40-6-301 to -311, allows certain judges to issue orders authorizing interception of wire, oral, or electronic communications upon the application of law enforcement. Tenn. Code Ann. § 40-6-304. The application must include the following information: (1) the identity of the applicant officer and the district attorney general authorizing the application; (2) a full and complete statement of the facts relied upon by the applicant, including details of the offense, a description of the facilities from which the communications are to be intercepted, a description of the type of communication sought to be intercepted, and the identity of all known persons committing the offense and whose communications may be intercepted; (3) a statement of the time period during which the interception must be maintained; and (4) a statement of facts concerning any previous applications. Tenn. Code Ann. § 40-6-304(a); State v. Moore, 309 S.W.3d 512, 522 (Tenn. Crim. App. 2009). The application also must contain "[a] full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." Id.

A qualified judge may issue an ex parte order authorizing interception upon finding that (1) "[t]here is probable cause for belief that an individual is committing, has committed, or is about to commit a particular offense enumerated in §40-6-305"; (2) "[t]here is probable cause for belief that particular communications concerning that offense will be obtained through the interception"; (3) "[n]ormal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous"; and (4) "[t]here is probable cause for belief that the facilities from which, or the place where, the wire, oral or electronic communications are to be intercepted are being used, or about to be used, in connection with the commission of the offense, or are leased to, listed in the name of, or commonly used by the person." Tenn. Code Ann. § 40-6-304(c).

The order may authorize interception for up to thirty days, with extensions to be granted as needed. Tenn. Code Ann. § 40-6-304(e). "The thirty-day period begins on the earlier of the day on which the investigative or law enforcement officer first begins to conduct an interception under the order or ten (10) days after the order is entered." Id. The order must also require reports to be made to the issuing judge, at ten-day intervals, "showing what progress has been made toward achievement of the authorized objective and the need for continued interception." Tenn. Code Ann. § 40-6-308(c); Moore, 309 S.W.3d at 523(citing State v. John A. Boatfield, No. E2000-01500-CCA-R3-CD, 2001 WL 1635447, at *12 (Tenn. Crim. App. Dec. 20, 2001) (describing generally the statutory requirements of the Wiretap Act)).

*1. Probable Cause:  the Initial Wiretap Applications*

When analyzing a finding that there was sufficient probable cause to issue a wiretap, we must decide whether the post-conviction court erred in finding that the issuing judge had a "substantial basis for concluding that a search warrant would yield evidence of wrongdoing." State v. Jacumin, 778 S.W.2d 430, 432 (Tenn. 1989) (citing Illinois v. Gates, 462 U.S. 213 (1983); Spinelli v. United States, 393 U.S. 410 (1969)); Moore, 309 S.W.3d at 523. "[I]n passing on the validity of a warrant, the reviewing court may consider only the information brought to the magistrate's attention." Jacumin, 778 S.W.2d at 432  (citing Aguilar v. Texas, 378 U.S. 108 n.1 (1964)).  "In reviewing the validity of an electronic surveillance order, we will accord 'great deference' to the determination of the issuing judge." United States v. Corrado, 227 F.3d 528, 539 (6th Cir. 2000).

In the probable cause section of the initial wiretap applications, the affiant noted several buys made by the confidential informant and telephone conversations which the informant attempted to purchase cocaine from Fleming who, in turn, got the cocaine from David and Shawn Wade. That section concluded,

[] Based on the buys made by CS-1, I believe that Shawn Tyrone Wade and David Wayne Wade are ANGELA CHRISTINE FLEMING'S source for cocaine. During the six buys, the only time there was a problem with David Wade and Shawn Wade supplying the quantity of cocaine FLEMING wanted was when Shawn Wade was in Wartrace, Tennessee.

[] From my experience investigating major drug traffickers, I know that for a drug dealer to be able to supply quarter kilograms of cocaine on demand, the drug dealer must have access to kilograms of cocaine. They must have a constant and reliable source, or sources, for kilograms of cocaine. The undercover operation has provided information making it possible to prosecute ANGELA CHRISTINE FLEMING for her part in the conspiracy to distribute cocaine. Through the undercover operation[,] investigators have been able to gather enough evidence to prosecute David Wayne Wade and Shawn Tyrone Wade as her cocaine suppliers.

[] However, I believe this is as far as the undercover operation can go in uncovering the full extent of the conspiracy. The other conspirators involved with FLEMING and the Wades in the cocaine trafficking operation have not and, most likely, will not be identified or prosecuted. Other customers of FLEMING and the Wades can not be identified through the undercover operation. Like[]wise, the Wades cocaine supplier(s) can not be identified

-10-

through the undercover operation. And, as detailed in the [necessity] section, surveillance, search warrants, interviews, and/or pen register and call detail records are not likely to be successful in identifying and prosecuting the other conspirators.

[] Only through the use of a wiretap investigation can investigators have an opportunity to learn the full scope of the cocaine trafficking conspiracy that is responsible for the distribution of multi-kilograms of cocaine over the past months (FLEMING told CS-1 she has been buying from them "for a long time"). Based on Shawn Wade's arrest in Wartrace, Tennessee. I also believe the conspiracy extends to other counties in Middle Tennessee.

[] Therefore, I am requesting an Order for the interception of FLEMING's xxx-xxxx telephone as part of the wiretap application. I believe the interception of xxx-xxxx will identify other customers of FLEMING, as well as confirming who her suppliers are. I believe that the telephone records detailed above show that Shawn Wade uses different telephones . . . to conduct his cocaine distribution. The wiretap of FLEMING's telephone will reveal Shawn Wade's involvement regardless of what telephone Wade is using at this time.

We conclude that the post-conviction court properly found that the foregoing information provided the issuing judge with a substantial basis from which to conclude that the wiretap investigation would reveal evidence of an ongoing conspiracy to traffick large amounts of cocaine and the identity of the co-conspirators.

*2. Necessity*

The Petitioner also contends that neither the application to wiretap his phone nor the initial wiretap applications, which were subsequently incorporated by reference in the application for a wiretap on his phone, contained a sufficient statement regarding the necessity of employing a wiretap investigation as opposed to other investigative techniques.

The Wiretap Act requires that an application for a wiretap include "[a] full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." Tenn. Code Ann. § 40-6-304(a)(3). Before a wiretap is issued, the issuing judge must make a determination that, in fact, "[n]ormal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous." Id.

As this court has previously recognized, this provision is "'simply designed to assure that wiretapping is not resorted to in situations where traditional investigative techniques would suffice to expose the crime.'" Moore, 309 S.W.3d at 525 (quoting United States v. Kahn, 415 U.S. 143, 153 n.12 (1974)).  Accordingly, this court has observed that "[l]aw enforcement is not required to 'exhaust every conceivable non-wiretap investigative technique.'" Id. (quoting United States v. Lambert, 771 F.2d 83, 91 (6th Cir. 1985); see State v. Jeffrey Kristopher King and Kasey Lynn King, M2012-00201-CCA-R3-CD, 2013 WL 5372268, at *14 (Tenn. Crim. App. Sept. 24, 2013). "'All that is required is that the investigators give serious consideration to the non-wiretap techniques prior to applying for wiretap authority and that the court be informed of the reasons for the investigators' belief that such non-wiretap techniques have been or will likely be inadequate.'" Moore, 309 S.W.3d at 525 (quoting Lambert, 771 F.2d at 91; see also Corrado, 227 F.3d at 539 ("This court has clarified that the purpose of the necessity requirement 'is not to foreclose electronic surveillance until every other imaginable method of investigation has been unsuccessfully attempted, but simply to inform the issuing judge of the difficulties involved in the use of conventional techniques.'")(quoting United States v. Landmesser, 553 F.2d 17, 20 (6th Cir. 1977)). However, while it is not a requirement that a wiretap be used solely as a last resort,

> a purely conclusory affidavit unrelated to the instant case and not showing any factual relations to the circumstances at hand would be . . . an inadequate compliance with the statute. . . . [Rather,] the mere fact that the affidavit . . . rested in part on statements that would be equally applicable to almost any [similar] case does not render the affidavit insufficient. What is required in addition, however, is information about particular facts of the case at hand which would indicate that wiretaps are not being routinely employed as the initial step in criminal investigation.

Moore, 309 S.W.3d at 526 (quoting Landmesser, 553 F.2d at 20) (internal quotation marks and citation omitted).  As the federal courts have made clear, however,

> courts will not invalidate a wiretap order simply because defense lawyers are able to suggest post factum some investigative technique that might have been used and was not. It is enough if the affidavit explains the prospective or retrospective failure of several investigative techniques that reasonably suggest themselves.

United States v. Hyde, 574 F.2d 856, 867 (5th Cir. 1978); see also United States v. Carrillo, 123 F.Supp. 2d 1223, 1245 (D. Colo. 2000) ("After-the-fact suggestions by defense attorneys as to how an investigation might have been handled are entitled to little weight in the

analysis.")

*a. Initial Wiretap Applications*

The Petitioner contends that the necessity portion of the initial wiretap applications did not demonstrate that the use of other investigative procedures were tried and had failed because those procedures were in fact successful in implicating and providing sufficient evidence to prosecute Fleming and the Wades.

After our review of the record, we conclude the initial wiretap applications contain a sufficient "statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." See Tenn. Code Ann. § 40-6-304(a)(3). The wiretap applications at issue set out, in detail, consideration of alternative investigative procedures, including the use or problems with use of physical surveillance; confidential sources; infiltration by undercover officers; general questioning of individuals who had been involved in cocaine trafficking activities with the target subjects; search warrants; and review and analysis of telephone records. It also provided both general information about the difficulties involved in investigating a large drug trafficking organization and "particular facts of the case at hand which would indicate that wiretaps are not being 'routinely employed as the initial step in criminal investigation.'" Landmesser, 553 F.2d at 20 (quoting Giordano, 416 U.S. at 515).

The Petitioner argues that the wiretaps were not necessary because prior to their implementation, law enforcement already had sufficient evidence – from other investigative means – to prove that Fleming and the Wades were involved in selling and conspiring with each other to sell large amounts cocaine. However, the stated purpose of the wiretap was to "uncover the full extent of the cocaine trafficking conspiracy" and not solely to discover criminal activity committed by certain individuals. See, e.g., Moore, 309 S.W.3d at 528 ("As stated by the [wiretap] orders in this case, however, the investigation had as its objective not merely the discovery of some criminal activity by Brown, David Moore, and the Defendant, but, among other things, '[t]he nature, extent, and method of operation' of the suspects' drug-trafficking business and the 'identities and roles of ... co-conspirators.'") The aim was to determine who was supplying the cocaine to Fleming and the Wades, and as the application noted, the investigative means employed to uncover their illegal transactions had failed to reveal those higher up in the conspiracy, i.e., the person or persons supplying the cocaine.

The Petitioner responds to this argument, averring that there was no evidence to suggest that there were any additional persons involved in the conspiracy to sell large

amounts of cocaine. However, as noted by the post-conviction court, the issuing judge did not abuse his discretion in determining that, given the circumstances, it was reasonable to conclude that Fleming and the Wades were being supplied with cocaine from an outside source; we agree. Because the necessity portion of the application noted that utilizing the other investigative techniques, while successful in incriminating Fleming and the Wades, failed to reveal the identity of this outside source or sources, it sufficiently illustrated the necessity of utilizing wiretaps to uncover the full extent of the conspiracy. It is for those reasons that the Petitioner is not entitled to relief on this issue.

### b. Wiretap Application for the Petitioner's Phone

The Petitioner contends that the wiretap application for his phone was unlawfully approved because the affiant failed to illustrate the necessity of the wiretap in uncovering evidence of the Petitioner's involvement in a conspiracy to traffick large amounts of cocaine. He explains that the wiretap of his phone was illegal because the State relied on the necessity requirement of Tennessee Code Annotated section 40-6-304(a)(3) to be fulfilled almost exclusively by incorporating the initial wiretaps by reference. The State responds that the necessity portion of the Petitioner's wiretap application was sufficient to meet the requirements of section 40-6-304(a)(3). We agree with the State.

The Petitioner is correct in his statement that the necessity portion of his wiretap application incorporated the initial wiretap application by reference; however, the State did not <u>solely</u> rely on this incorporation to satisfy the necessity statement required in his application.[2] In addition to the statement from the initial wiretap application,[3] the affiant also noted as follows:

> [] Investigators have learned from intercepted calls that [the Petitioner] does not live at the 121 Gordon address shown on his driver license. Investigators believe that this is a relative's address [the Petitioner] uses as a mailing address. Through intercepted calls on Wood's telephone and surveillance conducted in connection with the interceptions, investigators believe that [the Petitioner] is staying at . . . . Extended surveillance in an

---

[2] In <u>Moore</u>, this court cited with approval the State's method of incorporating information contained in previous wiretap applications into the wiretap application at issue by reference, explaining that the information from the previous applications retains its relevance and applicability due to the Petitioner's suspected membership in the same drug-trafficking organization as the target subjects of that application. 309 S.W.3d at 525.

[3] We have previously concluded that the necessity portion of the initial wiretap applications was sufficient to show the necessity of employing the use of wiretaps to uncover the "full extent" of the conspiracy.

apartment complex is difficult due to other residents and complex workers making inquiries on why officers are parked in the complex lot.

[] Director McWright told me that during the investigation in 1999[,] he attempted to conduct surveillance on [the Petitioner]. Director McWright said that it seem[ed that the Petitioner] was able to spot Director McWright conducting surveillance from blocks away. Director McWright said that when he would get behind [the Petitioner] in an effort to follow [the Petitioner] in his vehicle, [the Petitioner] would pull to the side of the road and stop. [The Petitioner] would then get behind Director McWright's vehicle and follow him.

. . . .

[] No confidential sources have been developed who knows [the Petitioner] or can provide the kind of information that can be gained from a wiretap of [the Petitioner's] telephones.

. . . .

[] Director McWright also told me that in 1999 a pen register was activated on two telephones, neither of which are the two currently used by [the Petitioner]. Director McWright said that the data collected from the pen registers did not result in the gathering of evidence of [the Petitioner's] drug trafficking.

As illustrated by the statements above, law enforcement did not rely solely on the incorporation of previous wiretap applications to comply with the requirements of Tennessee Code Annotated section 40-6-304(a)(3). See Moore, 309 S.W.3d at 526 (quoting Landmesser, 553 F.2d at 20)(noting that "the prior experience of investigative officers is indeed relevant in determining whether other investigative procedures are likely to succeed if tried)) (emphasis added). Because "[l]aw enforcement is not required to 'exhaust every conceivable non-wiretap investigative technique,'" the aforementioned statements and evidence offered in support thereof, irrespective of the incorporation by reference, was sufficient to show that some investigative procedures had been tried and failed and why others reasonably appeared to be unlikely to succeed if tried. See Moore, 309 S.W.3d at 525 (quoting United States v. Lambert, 771 F.2d 83, 91 (6th Cir. 1985)). Finally, because the evidence suggests that wiretaps were not being routinely employed as an initial step in the investigation, this issue is without merit.

*3. Minimization*

The Petitioner emphasizes throughout his brief that the wiretaps involved in this case intercepted more than 18,000 calls over a period of several months, which is essentially an argument that the interception of electronic communications were not properly minimized in violation of Tennessee Code Annotated section 40-6-304(e).

The Wiretap Act provides that "any order or extension of an order shall contain a provision that the authorization to intercept shall be conducted in a way as to minimize the interception of communications not otherwise subject to interception," Tennessee Code Annotated section 40-6-304(e), a requirement that mirrors that of Title III. See 18 U.S.C.A. § 2518(5); Moore, 309 S.W.3d at 529. The orders in this case comply with that provision. A party challenging police minimization procedures must address the specific procedures and calls at issue and demonstrate that monitoring was not conducted in a way as to minimize the interception of communications not otherwise subject to interception. As the Petitioner failed to identify any improperly intercepted calls or otherwise unlawful action undertaken by law enforcement, this issue is without merit.

## CONCLUSION

Based upon the foregoing, the judgment of the post-conviction court is affirmed.

_____
D. KELLY THOMAS, JR., JUDGE

-16-